United States District Court
Southern District of Texas
**ENTERED**
October 05, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| CANIKA JEFFERSON. § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:17–CV–00359 |
| § | |
| HAZA FOODS D/B/A WENDY'S. § | |
| § | |
| Defendant. § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Canika Jefferson ("Jefferson") has filed suit against Haza Foods d/b/a Wendy's ("Haza") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Plaintiff's Motion to Permit Withdrawal of Deemed Admissions ("Jefferson's Motion to Withdraw Deemed Admissions") (Dkt. 21) and Defendant Haza Foods d/b/a Wendy's Motion for Summary Judgment ("Haza's Motion for Summary Judgment") (Dkt. 19) are pending before the Court.[1]

Having considered the parties' briefing, the applicable legal authorities, and oral argument, the Court GRANTS Jefferson's Motion to Withdraw Deemed Admissions and RECOMMENDS that Haza's Motion for Summary Judgment be DENIED.

---

[1] All non-dispositive pretrial motions in this case were referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and all dispositive pretrial motions in this case were referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Dkt. 27.

## DISCUSSION

A.    **JEFFERSON'S MOTION TO WITHDRAW DEEMED ADMISSIONS**

### 1. Relevant Factual Background

Acting pro se, Jefferson filed this lawsuit on November 22, 2017. The lawsuit alleges that Haza, Jefferson's former employer, violated Title VII by retaliating against her in response to sexual harassment complaints. On March 29, 2018, Haza served Jefferson with Requests for Admission. There are, in total, 20 requests for admission, many of which bear directly on the underlying merits of the case. For example, Haza asked Jefferson to admit she "fully mitigated [her] front-pay and back-pay damages through re-employment or other sources" (Request No. 1); "the incidents [she] attribute to [her] male co-worker (the alleged harasser) were not pervasive" (Request No. 13); her "complaint of sexual harassment was not the reason for [her] termination from Defendant" (Request No. 17); she "suffered no loss of front wages as a result of Defendant's actions" (Request No. 18); and she "suffered no loss of back wages as a result of Defendant's actions" (Request No. 19). Dkt. 21-2.

Jefferson failed to respond to the Requests for Admissions within 30 days as required by the Federal Rules of Civil Procedure. On May 25, 2018, Arnold & Porter Kaye Scholer LLP, in a pro bono capacity, entered an appearance as counsel on behalf of Jefferson. On June 8, 2018, 72 days after the Requests for Admission were properly served, Jefferson's new lawyers served objections and responses to the Requests for Admission. Jefferson now seeks an order permitting her to withdraw and amend her deemed admissions so that the merits of her claims may be presented to the Court.

## 2. Legal Standard

Federal Rule of Civil Procedure 36 governs requests for admissions. Under Rule 36(a)(3), requests for admissions are deemed admitted if no written answer or objection is provided to the requesting party within 30 days after being served with the request. Rule 36(b) provides the framework under which deemed admissions may be withdrawn: "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). The Court may permit withdrawal or amendment of an admission "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.*

The Fifth Circuit has held that "while the district court has considerable discretion over whether to permit withdrawal or amendment of admissions, that discretion must be exercised within the bounds of this two-part test: 1) the presentation of the merits must be subserved by allowing withdrawal or amendment; and 2) the party that obtained the admissions must not be prejudiced in its presentation of the case by their withdrawal." *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991) (citations omitted). Each party bears the burden of proof on one element of this two-part test. "The party making the admission bears the burden of showing that the presentation of the merits will be served; the party obtaining the admission bears the burden of establishing prejudice." *Luu v. Int'l Inv. Trade & Serv. Grp.*, No. G-11-182, 2012 WL 2450773, at *2 (S.D. Tex. June 26, 2012) (citations omitted). With these general principles

in place, the Court considers whether Jefferson should be permitted to withdraw the deemed admissions in this case.

### (a) Presentation of the Merits

In determining whether to permit deemed admissions to be withdrawn, the Court is mindful that focusing on the ultimate merits of a case "is far better than having the court decide [the case] based on a party's failure to respond within a deadline." *Khanzai v. Bash*, No. H-15-3317, 2016 WL 5394268, at *1 (S.D. Tex. Sept. 27, 2016). *See also Hadra v. Herman Blum Consulting Eng'rs*, 74 F.R.D. 113, 114 (N.D. Tex. 1977) ("It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed."). This is especially true in this case since at the time Jefferson received the Requests for Admission she was a pro se litigant who was unfamiliar with the litigation process and did not understand the nature of the discovery requests served upon her. *See, e.g., United States v. Turk*, 139 F.R.D. 615, 618 (D. Md. 1991) (expressing a "reluctan[ce] to use Rule 36 procedures as a snare for this unwary pro se defendant"); *In re Savage*, 303 B.R. 766, 773 (Bankr. D. Md. 2003) ("Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of *pro se* litigants to have their cases fairly judged on the merits."). Importantly, the deemed admissions unquestionably go to the heart of the case, conclusively reaching the merits on liability and damages. Because "upholding the admissions would practically eliminate any presentation of the merits of the case," Jefferson has satisfied the first prong of Rule 36(b). *Curtis v. State Farm Lloyds*, No. H-

03-1025, 2004 WL 1621700, at *5 (S.D. Tex. Apr. 29, 2004) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)).

### (b) Prejudice to Plaintiff

The second prong of Rule 36(b) requires a showing that permitting the withdrawal of the deemed admissions "would not prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b). "Courts have usually found that the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Am. Auto Ass'n*, 930 F.2d at 1120 (citation omitted). "That it would be necessary for a party to prove a fact that it would not otherwise be obligated to prove if the matter were deemed admitted does not constitute the kind of prejudice contemplated by Rule 36(b)." *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 2073498, at *2 (N.D. Tex. May 13, 2008) (citation omitted).

Here, Haza does not even bother to assert that withdrawing the admissions would result in the undue prejudice that Rule 36(b) requires. Instead, Haza contends that this Court "has the discretion to deny a motion to withdraw deemed admissions despite the motion having met the two-prong analysis of Rule 36(b)." Dkt. 25 at 3. In advancing this position, Haza argues that the Court should decline to permit withdrawal of the deemed admissions because Jefferson "has blatantly disregarded the deadlines set by the Federal Rules of Civil Procedure." *Id.* As evidence of this "blatant[] disregard[]," Haza points to Jefferson's refusal to confer with counsel concerning the joint case management plan, her failure to timely respond to the Requests for Admission, and her alleged failure to file this

5

lawsuit within 90 days of receipt of the Equal Employment Opportunity Commission's ("EEOC") right-to-sue letter. *Id.* Cutting to the chase, the Court is not persuaded by Haza's position.

Jefferson has provided detailed and reasonable explanations for her actions, dispelling any conceivable claim that her behavior somehow warrants the Court to ignore the merits of her lawsuit and rely on deemed admissions to decide the case. In support of her Motion to Withdraw Deemed Admissions, Jefferson submitted a declaration fully explaining why she did not confer with opposing counsel on the joint case management plan:

> After the case was filed and the Defendant was served, I began to receive emails and telephone calls from the Defendant's lawyers. I frequently did not understand the issues they wanted to discuss, and I was afraid that they were trying to take advantage of me because I am not a lawyer. I understand now that they were attempting to discuss the discovery process and related scheduling issues, but I did not understand that at the time.

Dkt. 21-3 at 2. Jefferson further provides a satisfactory explanation as to why she did not respond to the Requests for Admissions within 30 days as Rule 36(a) requires: "I had never seen litigation discovery requests before and I was not familiar with the discovery process. I did not understand that I needed to provide information to the Defendant's lawyers in response to these requests, and I certainly did not realize that failing to do so within 30 days could result in 'deemed admissions' that would harm my claims." *Id.* at 3. As far as her failure to timely file this lawsuit within 90-days of receipt of the EEOC's right-to-sue letter, the Court finds, as discussed more fully below, that the chaos created by Hurricane Harvey prevented Jefferson from complying with the applicable deadline. Jefferson's late

filing certainly does not reflect, as Haza suggests, a "conscious disregard for the deadlines applicable to her case." Dkt. 25 at 1. At best, Jefferson's actions reflect a pro se litigant unfamiliar with the litigation process trying to navigate uncharted waters.

In sum, the Court does not believe that conclusively holding facts central to this litigation against Jefferson without giving her an opportunity to be heard would further the interests of justice. The Court, therefore, grants Jefferson's request to withdraw the deemed admissions.

**B.     HAZA'S MOTION FOR SUMMARY JUDGMENT**

Haza has moved for summary judgment on two separate grounds. First, Haza claims that Jefferson's deemed admissions establish that there is no genuine issue of material fact. Since the Court has already determined that the deemed admissions should be withdrawn, this basis for summary judgment falls by the wayside. Second, Haza argues that Jefferson's lawsuit is time barred because she failed to timely file suit within 90 days after she received a right-to-sue letter from the EEOC. It is this second argument that the Court analyzes below.

### 1. The 90-Day Filing Period

As a general rule, a lawsuit asserting Title VII claims must be filed within 90 days of a plaintiff's receipt of a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). A person who fails to file a lawsuit within the 90-day period forfeits her right to pursue such a claim. *See Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1251 (5th Cir. 1985). Because the Fifth Circuit treats the 90-day period "akin to a statute of limitations," the 90-day filing requirement is subject to equitable tolling. *Id.* at 1250.

The 90-day period begins to run on the date an individual receives her right-to-sue letter from the EEOC. *See Bunch v. Bullard*, 795 F.2d 384, 387–88 (5th Cir. 1986). In this case, Jefferson presents a declaration in which she states under oath that she picked up the EEOC letter from the post office on August 1, 2017. Accordingly, the 90-day period began to run on August 1, 2017, and ended 90 days later on November 1, 2017. Although Jefferson did not file the instant lawsuit until November 22, 2017, she claims that the doctrine of equitable tolling should apply to the 90-day period. The question this Court must address is whether the equitable tolling doctrine should be employed in this case. To put it bluntly, Jefferson's Title VII claims are barred unless the doctrine of equitable tolling applies.

**2. The Equitable Tolling Doctrine**

"The doctrine of equitable tolling preserves a plaintiff's claim when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citing *Burnett v. N.Y. Cent. R.R. Co.,* 380 U.S. 424, 428 (1965)). "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). Instead, a court must "draw on general principles to guide when equitable tolling is appropriate." *Id.*

"The party who invokes equitable tolling bears the burden of demonstrating that it applies in [her] case." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003) (citation omitted). *See also Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir. 1992) ("the plaintiff has the burden of demonstrating a factual basis to toll the period").

Generally speaking, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The first element requires the litigant to establish that he pursued his rights with reasonable diligence, not maximum feasible diligence." *Lugo-Resendez v. Lynch*, 831 F.3d 337, 344 (5th Cir. 2016) (internal quotation marks and citations omitted). "The second element requires the litigant to establish that an extraordinary circumstance beyond his control prevented him from complying with the applicable deadline. *Id.* (internal quotation marks and citations omitted).

The Supreme Court has identified several circumstances in which equitable tolling of the 90-day period might be justified: "(1) where notice from the EEOC does not adequately inform the plaintiff of the requirement that suit be commenced within the statutory period; (2) where a motion for appointment of counsel is pending; (3) where the court itself has led the plaintiff to believe that she has satisfied all statutory prerequisites to suit; and (4) where the defendant has, through affirmative misconduct, lulled the plaintiff into inaction." *Espinoza*, 754 F.2d at 1251 (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)). While the Fifth Circuit has never suggested that these bases are exhaustive, it has repeatedly noted that "[e]quitable tolling is to be applied 'sparingly.'" *Granger v. Aaron's, Inc.,* 636 F.3d 708, 712 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). *See also Phillips v. Leggett & Platt, Inc.*, 658 F.3d

9

452, 457 (5th Cir. 2011) ("Equitable tolling . . . is a narrow exception . . . that should be 'applied sparingly.'") (quoting *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002)).

### 3. Jefferson's 90-Day Filing Period Was Equitably Tolled During Hurricane Harvey and Her Resulting Displacement

On August 25, 2017, Hurricane Harvey struck the Houston-Galveston area, causing Harris, Brazoria, and Galveston counties to be declared disaster areas by federal and state officials. It was, quite literally, the storm of a lifetime, breaking a national rainfall record for a single tropical storm.[2] Unprecedented in size and force, Hurricane Harvey hit the Gulf Coast with a vengeance, displacing thousands of residents from their homes as the result of a "flood event [] on an entirely different scale than what we've seen before in the United States."[3] The herculean storm caused an estimated $125 billion in damages.[4] Truly, "meteorologists' worst case scenario ended up coming true."[5]

Unfortunately, the powerful storm did not spare Jefferson and her family from pain, heartache, and despair. Concerned for her family's safety, Jefferson and her three children

---

[2] *See* Brian Resnick, *Harvey broke a national rainfall record for a single tropical storm*, Vox (Aug. 29, 2017, 5:33pm), https://www.vox.com/science-and-health/2017/8/29/16221542/hurricane-harvey-rainfall-record-houston ("In Southeast Houston, a weather station has registered more than 51 inches of rain from Tropical Storm Harvey.").

[3] Jason Samenow, *Harvey is a 1,000-year flood event unprecedented in scale*, The Washington Post (Aug. 31, 2017), https://www.washingtonpost.com/news/capital-weather-gang/wp/2017/08/31/harvey-is-a-1000-year-flood-event-unprecedented-in-scale/?noredirect=on&utm_term=.4fc7bf194dcb.

[4] *In Harvey's Wake: 68 Dead; Damage Costs in the Billions*, Insurance Journal (Aug. 24, 2018), https://www.insurancejournal.com/news/southcentral/2018/08/24/499111.htm.

[5] Kiah Collier, *This is already Houston's "worst flood." It's only going to get worse*, The Texas Tribune (Aug. 27, 2017, 9:00pm), https://www.texastribune.org/2017/08/27/harvey-brings-catastrophic-flooding-houston/.

10

evacuated their home in Texas City on the afternoon of August 25, 2017, packing everything they could in her car. They tried to return to their home after the storm made landfall, but severe flooding and road closures made that impossible. Faced with limited resources and minimal alternatives, Jefferson and her kids moved in with a cousin from August 31, 2017, to September 6, 2017.

On September 6, 2017, Jefferson and her family finally obtained access to their family home. But the "homecoming turned to heartbreak in an instant. Not only was [their] house flooded and [their] belongings damaged and destroyed, but an eviction notice had been posted on [their] door earlier that day." Dkt. 23-1 at 8. Although their house was badly damaged, Jefferson and her children stayed in the flooded home from September 6 until September 14 or 15, 2017. To make matters worse, schools were closed and Jefferson was forced to stay home with her kids until September 11, 2017, preventing her from earning an income and looking for a new place to live. On September 14 or 15, 2017, Jefferson moved back into her cousin's apartment, where she stayed until September 29, 2017, when she was finally able to secure a new place to live. In her declaration submitted in opposition to Haza's Motion for Summary Judgment, Jefferson summarized the tough circumstances she encountered as a result of Hurricane Harvey:

> On August 25, 2017, when I was displaced by the hurricane, until September 29, I was largely homeless and had no choice but to focus on protecting and sheltering my family. That 36-day period delayed me from filing my complaint in this suit. If it were not for Hurricane Harvey, I would have been able to file my complaint within the 90-day period after I received my Right to Sue Letter on August 1, 2017.

Dkt. 23-1 at 13.

11

Although equitable tolling is only to be applied in "rare and exceptional circumstances," the Court believes that the instant circumstances certainly merit application of the equitable tolling doctrine. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). It is the Court's firm belief that if Hurricane Harvey and Jefferson's resulting displacement do not constitute extraordinary circumstances, then nothing does. *See Carlisle v. United States*, 517 U.S. 416, 436 (1996) (Ginsburg, J. concurring) (suggesting that equitable tolling doctrine may apply to excuse untimely filing of meritorious motion due to an "Act of God"); *Gelpi v. Shinseki,* No. 07-827, 2013 WL 3895215, at *3 (Vet. App. 2013) (determining that Hurricane Katrina was an extraordinary circumstance); *McCreary v. Nicholson*, 20 Vet. App. 86, 91 (Vet. App. 2006) ("a hurricane is an extraordinary circumstance that is beyond [the party's] control"). In the aftermath of the hurricane, Jefferson "necessarily—and reasonably—focused her efforts on protecting herself and her family from the hurricane and resulting flooding; finding shelter, clothing, and food for her family; returning her children to school once the schools in her community re-opened, and caring for them during the day until then." Dkt. 23 at 14. As a result, the time and ability she had available to pursue the filing of this lawsuit was dramatically curtailed. This is precisely the type of situation that screams for the application of the equitable tolling doctrine.

In addition to showing that some extraordinary circumstances stood in her way to prevented timely filing of the lawsuit, Jefferson must establish that she pursued her rights diligently. *See Menominee Indian Tribe of Wis.*, 136 S.Ct. at 755. "[A] plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.'" *Jaso*

12

*v. The Coca Cola Co.*, 435 F. App'x 346, 357 (5th Cir. 2011) (quoting *Baldwin Cty. Welcome Ctr.,* 466 U.S. at 152). Importantly, Jefferson must show only "reasonable diligence," not "maximum feasible diligence" to pursue an equitable tolling defense. *Holland*, 560 U.S. at 653 (citations omitted).

In this case, Jefferson easily establishes that she took reasonable steps to pursue her Title VII claim despite facing incredible personal obstacles wrought by Hurricane Harvey. Although she was displaced from her home and needed to address her family's basic needs, Jefferson did not sit idly by and ignore her potential Title VII claim. Instead, she contacted various attorneys and legal aid organizations—by phone and email—during this time period to seek legal assistance, called the EEOC to ask for an extension to file her complaint, and called the Clerk's Office at the Galveston Division of the United States District Court for the Southern District of Texas to obtain information on how to file a complaint. As Jefferson succinctly noted: "Even though I was focused on living day-to-day, finding a new home, and keeping my children safe, I took what steps I could to pursue my case." Dkt. 23-1 at 11. In the Court's view, these actions demonstrate that Jefferson exercised reasonable diligence under the circumstances.

It is important for a judge to make sure that he or she does not simply become a robot, mechanically applying the law to a given set of facts. A jurist must exercise sound judgment, humanity, and empathy, remembering that every person, no matter her race, religion, socio-economic status, sexual orientation, or a myriad of other factors, deserves a chance to be heard. The Court will go to great lengths to exercise its discretion to ensure a litigant has an opportunity to present her case to a judge or jury—especially when

circumstances completely outside her control would otherwise slam the courthouse door in her face. The Court, therefore, concludes that Hurricane Harvey and Jefferson's resulting displacement constitute extraordinary circumstances that warrant application of the equitable tolling doctrine. Summary judgment should be denied.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court GRANTS Jefferson's Motion to Withdraw Deemed Admissions (Dkt. 21) and RECOMMENDS that Haza's Motion for Summary Judgment (Dkt. 19) be DENIED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 5th day of October, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE